UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **MAGISTRATE NO. 21-MJ-233 (RMM)** |
| | : | |
| **CLAYTON MULLINS,** | : | |
| Defendant. | : | |

### MOTION FOR EMERGENCY STAY AND
### FOR REVIEW AND APPEAL OF RELEASE ORDER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to, first, stay defendant Clayton Mullins's release pending trial, and second, review the decision by the Magistrate Judge from the Western District of Kentucky to deny the government's motion for pre-trial detention. In support thereof, the government states the following:

**I.     BACKGROUND**

    **A.     Procedural Posture**

On February 23, 2021, defendant Clayton Ray Mullins was arrested in his home state of Kentucky on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge Robin M. Meriweather in connection with a Criminal Complaint charging the defendant with Obstruction of Law Enforcement During Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), Assaulting, Resisting, or Impeding Certain Officers or Employees, in violation of 18 U.S.C. § 111(a)(1), Knowingly Entering or Remaining in any Restricted Building or Ground, in violation of 18 U.S.C. § 1752(a)(1), Disorderly and Disruptive Conduct in any Restricted Building or Ground, in violation of 18 U.S.C. § 1752(a)(2), Engaging in Physical

1

Violence any Restricted Building or Ground, in violation of 18 U.S.C. § 1752(a)(4), and Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F).

On February 25, 2021, during the defendant's initial appearance in the Western District of Kentucky, the government made a motion to detain the defendant without bond pending trial pursuant to 18 U.S.C. §§ 3142(e) and (f)(2). A detention hearing was held on February 26, 2021, during which the presiding magistrate judge denied the government's detention motion and issued an order releasing the defendant with certain conditions. Following this, the government orally moved to stay the defendant's release pending an appeal by the government. The magistrate judge granted that request, and absent further action, the release will be effectuated at approximately 4:30 pm CST on March 2, 2021.

The government hereby appeals that release order. We also ask this Court to stay the Defendant's release pending a hearing on this appeal. Jurisdiction over this review and appeal lies in this Court, rather than to a judge in the Western District of Kentucky, pursuant to 18 U.S.C. § 3145(a)(1) (when defendant is released by person other than judge of court having original jurisdiction over offense, government's appeal lies to court of original jurisdiction).

**B.     Statement of Facts**

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public. During the joint session, elected members of the United States House of Representatives and the United States

Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

*The Defendant's Initial Presence at the U.S. Capitol*

The defendant and his wife traveled from Kentucky to Washington, D.C. for the events of January 6, 2021. His prominent presence at the U.S. Capitol was captured in numerous videos and photographs on social media. Photos and videos showing Mullins were captioned or tagged with the hashtag #slickback, a reference to the slicked back style in which Mullins wears his hair. One such video, posted on Twitter,[1] shows a group of rioters trying to force their way through a barricade of bicycle racks in a restricted area of the U.S. Capitol Grounds, and then spraying law enforcement officers with a chemical irritant. The video shows the defendant was involved in this altercation. Mullins is seen rushing towards the police line immediately after his fellow rioter sprayed the officers with the chemical irritant, and then turning back toward the crowd as he himself was affected by the chemical irritant.



---

[1] Available at https://twitter.com/1600PennPooch/status/1350587717881647106?s=20.

A review of Metropolitan Police Department ("MPD") bodyworn camera ("BWC") confirms that this altercation occurred on the southwest perimeter of the U.S. Capitol, near a media tower, at 2:10 pm.  BWC shows the rioters became increasingly hostile in the minutes before the rioters sprayed law enforcement officers with the chemical irritant.  As the crowd continued to push against the police barricade, the force of the crowd knocked over a metal light post.  Officers rushed to grab the light post as it began to fall.  The force of the crowd, combined with the falling light post, knocked over some of the metal bicycle racks that were serving as a barricade between the crowd and the restricted Capitol.  As MPD and U.S. Capitol Police ("USCP") officers struggled to place the bicycle racks back in place and hold the police line, an individual in the crowd stepped forward and sprayed them with a chemical irritant, as seen in the Twitter video.  Officers' BWC shows Mullins in the crowd seconds before the chemical irritant was sprayed on the officers.



BWC footage showed that the mob of rioters became even more hostile after they sprayed the chemical irritant on the officers at 2:10 pm.  The crowd, including the defendant, eventually overran the police barricade and physically engaged with officers, who were attempting to protect the U.S. Capitol by maintaining the perimeter.  Law enforcement, however, were outnumbered by the violent crowd and forced to retreat up the Capitol steps towards the terrace levels.  The

photograph below shows the defendant engaging with officers shortly before the officers were forced to retreat.



Video footage posted to YouTube[2] also appears to depict the time period in which the crowd was able to push past the law enforcement barricade. The video shows that rioters began grabbing bicycle racks that were serving as a barricade, and passing them back through the crowd. The defendant appears to be amongst those that assisted in passing back the bicycle racks.



---

[2] Available at https://www.youtube.com/watch?v=iNFcdpZdkh0.

After the rioters overran the initial police barricades, Mullins continued on to the Capitol Building, and can be seen standing on the railings of the Capitol terrace at one point.



Eventually, Mullins made his way to the archway of the lower western terrace of the Capitol Building, where members of MPD and USCP were stationed to protect rioters from gaining entrance to the Capitol.



The aforementioned YouTube video footage shows that the defendant at one point was able to

enter the tunnel, and then appeared to be ejected from the tunnel. As he was ejected from the tunnel, he clung to the wooden façade that was erected around the archway.



The defendant remained at the entrance to the lower western terrace archway after he was ejected from the tunnel.

*The Defendant's Assaultive Conduct at the Capitol's Lower Western Terrace*

MPD Officer A.W. was amongst those MPD officers who were directed to report to the U.S. Capitol to assist the USCP in their duties to maintain the security of the U.S. Capitol. At approximately 4:20 pm, Officer A.W. walked through the interior tunnel of the U.S. Capitol Building and assumed a post in an archway that provided access to the building's lower western terrace. Officer A.W. was wearing a full MPD-issued uniform and neon jacket. Officer A.W.'s approximate location is denoted below by the red circle.



8

In a 90 second time period, from approximately 4:27:00 to 4:28:30, Officer A.W. and at least two other officers, Officer B.M. and Officer C.M. were brutally assaulted by the rioters, including the defendant.[3] Specifically, Officer A.W. was knocked to the archway ground by a currently un-identified assailant, and then had his baton snatched out of his hands by another rioter. While Officer A.W. was laying on the ground of the archway, Officer B.M. was pulled out of the archway, overtop Officer A.W., dragged into the crowd in a prone position and assaulted by rioters with a baton and American flag pole. Other officers, including Officer C.M., were assaulted as they attempted to reach out for Officer B.M. Meanwhile, Mullins and others began to drag Officer A.W. into the crowd.

Officer A.W. recalled having his helmet ripped off his head and being stripped of his CDU baton, gas mask (later recovered), and MPD issued cellular phone. As he was dragged into the mob, Officer A.W. was kicked, struck with poles, and stomped on by several individuals. Additionally, Officer A.W. recalled being maced once his mask was ripped off. At some point during the assault, Officer A.W. was able to retrieve his gas mask and one individual prevented the rioters from further assaulting him. Officer A.W. was able to get on his feet and force his way back to the police line at the archway and into the tunnel area. Once A.W. was back in the tunnel, another officer realized A.W. was bleeding from his head. Officer A.W was subsequently taken to Washington Hospital Center and received staples to close the laceration on his head.

BWC and videos posted to social media document how Mullins violently pulled Officer A.W. out into the mob.  Officer C.M.'s BWC shows Officer A.W., in his reflective MPD jacket, on the ground of the archway as Mullins grabbed his leg. In the video, at least one other officer

---

[3] Seconds before the assault began, at 4:26:55 pm, a member of the crowd was pleading with Officer A.W. and others for help, as his friend Roseanne Boyland was dying after being trampled by the mob.  Boyland's associate, Justin Winchell, was attempting to bring Boyland's body forward to law enforcement when the assaults of Officers A.W., B.M., and C.M. began.

9

makes multiple attempts to pull Officer A.W. away from Mullins, essentially engaging in a battle of tug of war.[4]



MPD Officer D.P.'s BWC shows Mullins continuing to pull on Officer A.W.'s leg, pulling him further towards the crowd.



Videos documenting MULLINS' assault of A.W. were also posted on Instagram and YouTube. A video posted by Storyful to YouTube[5] shows Mullins leaning over a handrail and

---

[4] This image is redacted in part because Rosanne Boyland's body is visible.
[5] *Available at* https://youtu.be/aEGthdTzedk.

10

making multiple attempts to grab Officer A.W.'s leg. Once Mullins successfully secured his grip on Officer A.W.'s right foot, he began violently pulling on it, ultimately leading to Officer A.W. being dragged down the stairs at the lower west terrace tunnel entrance.



Additionally, on or about January 28, 2021, a clearer picture of MULLINS, with A.W.'s leg within his grip, was posted on Twitter[6] with the user citing "NYT" as his source.



---

[6] Available at https://twitter.com/sheldonchang/status/1355014884732375041?s=20.

After he dragged Officer A.W. out of the archway, the defendant then participated in the assault of Officer B.M., who was struggling to get to his feet in the crowd.  The Storyful video shows that after Mullins dragged Officer A.W. down the steps, Mullins stood upright, and looked over his right shoulder and further down the steps to where Officer B.M. was located.  At that time, several individuals were attempting to help Officer B.M. to his feet and up the stairs.  Mullins began to yell at those individuals and frantically point back down the steps, towards the crowd.



When the "helpers" continued to try to get Officer B.M. back to the police line in the arch, Mullins reached out with his right arm, and pushed Officer B.M. on the head back down the steps.



Eventually others guided Officer B.M. away from Mullins and off to the side of the violent crowd.

*Identification of the defendant*

A lead directed law enforcement to a Kentucky driver's license for Mullins. Based upon the biographical data from Mullins' license, a financial account was identified for Mullins at FNB Bank, Inc. (FNB). Mullins was identified by an FNB employee, W-1, who had an approximate 30-year banking relationship with MULLINS. W-1 advised MULLINS was in the bank lobby on February 4, 2021. Law enforcement obtained surveillance video footage from FNB. The footage depicted the defendant standing at a teller station in the lobby of FNB on February 4, 2021. W-1 identified the individual in the photograph as Clayton Mullins.



### C. Order for Release

On February 25, 2021, during the defendant's initial appearance in the Western District of Kentucky, the government orally moved for the defendant to be detained pending trial pursuant to 18 U.S.C. §§ 3142(e) and (f)(2). The defendant is eligible for detention, pursuant to 18 U.S.C. § 3142(f)(2), on the grounds that there is a serious risk of flight and a serious risk that the defendant will obstruct or attempt to obstruct justice. This is based on a combination of the facts underlying the instant offense, including his assaults on federal officers and his obstructive and disruptive conduct at the U.S. Capitol, as well as the defendant's personal characteristics.

During a detention hearing on February 26, 2021, Magistrate Judge Lanny King denied the government's detention motion. The magistrate judge granted a brief stay of his release order, and absent further action, the defendant's release will be effectuated at approximately 4:30 pm CST on March 2, 2021. The government hereby appeals and seeks review of that release order and also asks this Court to interpose its own stay of the order until a hearing on this motion can be held.

### III. ARGUMENT

Title 18, U.S.C. § 3145(a) states:

**(a) Review of a release order** – If a person is ordered released by a magistrate, …

14

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[7]

---

[7] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

The defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(2), on the grounds that there is a serious risk of flight and a serious risk that the defendant will obstruct or attempt to obstruct justice. When the defendant was stopped and arrested, he was driving a vehicle that was registered to his car and used parts dealership, and had a firearm in the vehicle.[8] The defendant has no vehicles registered to himself. He has no known ties to the District of Columbia and is self-employed. He now faces a significant term of imprisonment in the face of overwhelming evidence against him. All of this gives him a compelling incentive to flee.

Moreover, there is a serious risk that the defendant will obstruct or attempt to obstruct justice. The defendant's very actions in this case – charging at a police barricade, dismantling a police barricade, attempting to enter a tunnel into the Capitol, and assaulting two separate police officers who were dragged into a violent mob – are in their very essence obstructive, and all carried out in an attempt to prevent Congress from continuing its duty to certify the 2020 election. His conduct was not an isolated incident, but rather at least two hours of sustained violence and obstruction. Although the defendant does not have an adult criminal record, he does have a lengthy traffic record that includes many infractions that are further evidence of his lack of regard for laws and authority. Consequently, the government requests review of the magistrate judge's decision to release the defendant and seeks a further stay of the order from this Court.

To the extent the Court grants this request, the government is and will be prepared to show that the remaining factors under 3142(g) favor detention, to wit: (1) the nature of the offense along with the weight of the evidence are strong and favor detention; (2) the defendant's criminal history,

---

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

[8] Both the defendant and his wife have Carrying Concealed Deadly Weapon (CCDW) permits.

though it is limited to traffic violations, does show a willingness to not follow rules; and (3), the danger to the community is very real. The investigation remains ongoing.

For the reasons stated herein, the government prosecutes this appeal of Magistrate Judge Lanny King's decision to release the defendant and seeks a stay of the order from this Court.

***WHEREFORE***, the United States respectfully prays this Honorable Court to stay the order releasing Defendant Clayton Ray Mullins, to convene a hearing to review the decision to release Clayton Ray Mullins and to order instead that he be held without bond pending trial.

>Respectfully submitted,
>
>Michael R. Sherwin
>Acting United States Attorney
>New York Bar No. 4444188
>
>
> */s/ Colleen D. Kukowski*
>Colleen D. Kukowski
>DC Bar No. 1012458
>Assistant United States Attorney
>555 4th Street, N.W.
>Washington, D.C. 20530
>(202) 252-2646
>Colleen.Kukowski@usdoj.gov

CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention was served on all counsel of record via the Court's electronic filing service.

                                      */s/ Colleen D. Kukowski*
                                      COLLEEN D. KUKOWSKI
                                      Assistant United States Attorney

Date:  March 1, 2021