# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : Case No: 21-cr-35 (RC) |
| CLAYTON RAY MULLINS, | : 18 U.S.C. § 111(a)(1) |
| Defendant. | : |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Clayton Ray Mullins, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint

1

session, elected members of the United States House of Representatives and the United States Senate were meeting in the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol,

requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

8. On January 6, 2021, the U.S. Capitol Police ("USCP") requested assistance from the Metropolitan Police Department ("MPD") and other law enforcement agencies in the area to protect the U.S. Capitol. Multiple MPD officers and other law enforcement officers came to assist. At various times on January 6, these officers assumed posts at various locations inside and around the U.S. Capitol Building, including the on West Plaza and at an archway (the "Archway") that provided access to the interior U.S. Capitol Building from the Lower West Terrace via a passageway (the "Tunnel").

### *Clayton Ray Mullins's Participation in the January 6, 2021, Capitol Riot*

9. On January 6, 2021, the defendant, Clayton Ray Mullins attended the "Stop the Steal" Rally at the Ellipse in Washington, D.C. He then joined the crowd walking from the Ellipse to the U.S. Capitol on Pennsylvania Avenue. Mullins arrived on the West Lawn, between the U.S.

Capitol Building and the Capitol Reflecting Pool, and then walked up to the West Plaza, joining hundreds of other rioters. At the West Plaza, Mullins and his fellow rioters encountered a line of police officers behind a barricade fence, attempting to keep the rioters away from the U.S. Capitol Building. From 2:07 p.m. through approximately 2:28 p.m., Mullins was actively involved with others in pushing against the barricade and the officers in order to advance closer to the U.S. Capitol Building. At approximately 2:28 p.m., the rioters prevailed and took over the West Plaza; the police officers fell back.

10. From approximately 2:33 p.m. through 2:38 p.m., Mullins joined a crowd that was driving officers back onto a temporary stairwell leading from the West Plaza to the inaugural stage. The officers again fell back, and Mullins and others continued inching their way closer to the U.S. Capitol Building.

11. By approximately 2:47 p.m., Mullins had climbed the Northwest steps. Once there, he helped other rioters up the steps and onto the railing and was waving rioters forward towards the Lower West Terrace for approximately 30 minutes.

12. By approximately 4:16 p.m., Mullins was again waving rioters forward, this time to join the press of people pushing to gain access to the U.S. Capitol Building through the Archway at the Lower West Terrace. Mullins then joined the push into the Tunnel, where police officers had formed a line in an attempt to keep rioters from gaining entry to the U.S. Capitol building. He passed the Archway and entered the Tunnel, joining other rioters in their attempt to push their way through the Tunnel and into the U.S. Capitol Building. At 4:21 p.m., officers pushed the rioters, including Mullins, out of the tunnel and back to the mouth of the Archway. Police officers then established a line at the Archway.

13. By that time, hundreds of rioters had gathered at the Archway, some of whom were

4

throwing and/or swinging various objects at the group of law enforcement officers positioned at the mouth of the Archway, including MPD Officers A.W., B.M., and C.M. These officers were wearing full-MPD issued uniforms, including marked helmets, police badges, and duty belts. Starting at approximately 4:27 p.m., Officer A.W. was positioned towards the opening of the Archway when co-defendant Justin Jersey charged at Officer A.W., grabbing his face and knocking Officer A.W. to the ground. While Officer A.W. was lying on the ground at the mouth of the Archway, co-defendant Jack Wade Whitton climbed over a railing and began striking Officer B.M. with a crutch and then kicked Officer A.W., who was still lying on the ground.

14. Whitton then grabbed Officer B.M., first by his baton, then by the helmet and the neck of his ballistic vest, pulled him down, over Officer A.W., and started dragging Officer B.M. down the steps in a prone position. Whitton and co-defendants Jeffrey Sabol and Logan Barnhart dragged Officer B.M. fully into the crowd.

15. Mullins was positioned on the steps below the Archway. Mullins leaned over a handrail and made multiple attempts to grab Officer A.W.'s leg. Co-defendant Ronald Colton McAbee grabbed Officer A.W.'s leg, and then his torso, and pulled Officer A.W. out of the Archway. Once Mullins successfully secured his grip on Officer A.W.'s foot, he began violently pulling on it for at least 16 seconds. Ultimately Officer A.W. was dragged down the steps, where he was further attacked by additional rioters. As a result of these attacks, Officer A.W. sustained serious physical injuries including a laceration to his head and bruising and abrasions to his body. After the event, Officer A.W. was hospitalized and treated for the laceration.

16. When Officer B.M. was dragged down the steps into the crowd, Officer B.M. was beaten by co-defendants Peter Stager and Mason Courson with a flagpole and a police baton. As a result of the attack, Officer B.M. sustained physical injuries including bruising and abrasions.

After the assaults, Officer B.M. eventually was able to stand upright and attempted to climb the steps to rejoin the other officers in the Archway. As Officer B.M. did this, Mullins and Courson pushed Officer B.M. back down the steps, causing Officer B.M. to stumble back into the crowd. When Officer B.M. was in the crowd, co-defendant, Michael Lopatic, stole Officer B.M.'s body worn camera.

17. When Mullins engaged in the conduct described in paragraphs 15 and 16, he knew that the officers were engaged in the performance of official duties as officers from the MPD who was assisting the USCP to secure the U.S. Capitol.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Benet J. Kearney
Benet J. Kearney
Assistant United States Attorney

/s/ Alexandra F. Foster
Alexandra F. Foster
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, Clayton Mullins, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 9/6/2023

Clayton Ray Mullins
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 9/6/2023

Pat Woodward, Esq.
Attorney for Defendant